

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN 11

GROVER SELLERS
ATTORNEY GENERAL

Honorable George W. Cox
State Health Officer
Texas State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-6919

Re: Duties of the Board of Health under
Article 4442B, V. A. C. S., concern-
ing the inspection of convalescent
homes.

Your letter recites the facts that:

"Article 4442B, Acts of Forty-Ninth Legisla-
ture, known as 'Convalescent Homes' provides in part
as follows:

"Section 2, defines a convalescent home as any
place or establishment where three (3) or more pen-
sion or old age assistance recipients are housed, etc.
How is the term pension to be applied in determining
who would and who would not come within its meaning,
insofar as this Act is concerned?

"Section 6 states that these homes shall be in-
spected by this Department at least once every three
(3) months.

"In just what position is this Department placed
in carrying out this provision since funds were not
made available and sufficient personnel lacking with-
in the Department?"

The Act regulating and licensing convalescent homes,
being Chapter 342, p. 577 of the Acts of the 49th (1945) Legis-
lature and carried into Vernon's Annotated Civil Statutes as
Article 4442B and in Vernon's Annotated Penal Code as Article
701B, makes it unlawful to establish, operate or maintain a

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George W. Cox, page 2

convalescent home in Texas without first having obtained from the State Department of Public Health a license for such purpose, (Sec. 1.) Section 2 of the Act defines a convalescent home as any place or establishment where three or more pension or old age assistance recipients are housed for hire or profit, and excepts hotels, hospitals, inns or tourist camps. Section 3 is the penalty provision of the Act. Section 4 provides for the licensing of such homes by the State Department of Public Health and provides for a licensing fee of $1.00 to be charged and collected by the department for each license so issued by it, and provides further that the fees collected "shall be deposited in the State Treasury to the credit of the General Fund."

Section 5 of the Act is as follows:

"Sec. 5. The State Department of Public Health shall make a proper investigation concerning each application for license hereunder, and shall deny a license to any applicant when such investigation so warrants. Said Department is further authorized and empowered to revoke any license issued hereunder at any time, after reasonable notice and hearing, upon satisfactory proof of the existence of unsanitary and/or unwholesome conditions in such convalescent home so licensed."

Section 6 of the Act is as follows:

"Sec. 6. Such convalescent homes shall be open at all reasonable times to inspection by the State Department of Public Health, and each home shall be inspected by said Department at least once every three (3) months. Said Department shall make and file with the Governor of this State during the month of January of each year an annual report concerning the condition of such homes."

You first desire to know "How is the term 'pension' to be applied in determining who would and who would not come within its meaning, insofar as this Act is concerned?"

A pension has been defined as a regular allowance paid to an individual by a government. (32 Tex. Jur. 769). The use of the term "pension" imports respect to the recipient and implies a duty and an obligation upon the State to specifically

Honorable George W. Cox, page 3

care for such classes of citizenry, (Creighton v. Pope County, (Ill.) 50 N. E. (2d) 984. It is our opinion that the term "pension" as used in the Act means a regular governmental gratuity paid to an individual as distinguished from an allowance made by an individual, such as a relative to another relative.

In your second question, you desire to know "In just what position is this (Health) Department placed in carrying out this provision since funds were not made available and sufficient personnel lacking within the Department?"

The writer of this opinion has checked carefully the appropriations to the State Department of Public Health, Chapter 378, at page 860, Acts of the 49th (1945) Legislature and is unable to find any appropriation specifically providing funds for inspection of "convalescent homes". However, there is no question but that the Legislature meant for your department to enforce Article 4442B and we believe the over-all appropriations to your department are meant to be used in part for its enforcement. Most State departments have duties for which the Legislature does not make specific appropriations in every instance, and this appears to be just such an instance. You will note from a reading of the appropriation bill that there is no specific appropriation for inspection of railroad cars and privies (Article 4477), for day nurseries (Article 4442A), nor for several other inspection duties provided for in the Sanitary Code (Article 4477-1). Nevertheless, we presume these duties are being carried out by the Board of Health or by someone duly authorized by the Board.

We direct your attention to the maintenance and miscellaneous appropriation features of the appropriation act (page 863) where item 97 appropriates $47,000.00 annually for "traveling expenses, entire department." Also item 100 appropriates annually for "printing and binding" the sum of $5,000.00; and item 102 appropriates annually the sum of $7,500.00 for "office supplies and equipment, telephone, telegraph, freight, cartage, express, box rent and contingencies." A reading of the appropriation act will disclose items of similar character.

Insofar as your problem pertaining to lack of sufficient personnel is concerned, we call your attention to Article 4420 allowing inspections by "any person duly authorized" by the State Board of Health and also to Section 2, Subdivision 14 of the appropriation bill reading as follows:

Honorable George W. Cox, page 4

".  .  . No salary for which an appropriation
is made herein shall be paid to any person unless
such person actually discharges assigned duties.
Provided, that it shall be the duty of the head
of any department to transfer an employee of his
office to any desk or place within his department
when necessary to perform the duties of the de-
partment and for proper dispatch of business.
(Page 945) (Underscoring ours)"

It would seem then, in view of the foregoing, that the
Department should use such funds as are available and such per-
sonnel as may be available, as above pointed out, to enforce
Article 4442B insofar as practicable. Beyond this the Depart-
ment is not required to go since the law never requires an im-
possibility; it only requires the exercise of due care in dis-
charging official duties to the extent of the personnel, funds
and means supplied.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _David Wuntch_

David Wuntch
Assistant

By _Woodrow Edwards_

Woodrow Edwards
Assistant

WE/JCP

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL